## COWING V. ALTMAN.

*Bills and notes — delay in presentation of check — Illegal consideration.*

A check drawn upon a bank, dated March 8, 1871, was received for value by another bank May 2, 1872. The drawer and payee resided and both banks were located in the same place. *Held,* that the bank did not receive the check in the usual course of business, and the drawer was not cut off from a defense to it on the ground that it had passed into the hands of a *bona fide* holder without notice.

The consideration of the check was an agreement to pay the payee the sum named therein for his services as assignee in bankruptcy over and above the fees and compensation allowed by law.

*Held,* that the agreement was in violation of section 45 of the United States bankruptcy act, the consideration of the check illegal, and the check void.

THIS is an action on a check against the drawer; the check was made and dated at Buffalo, March 8, 1871, to the order of Edwin A. Holbrook, and deposited with his attorney to be subsequently delivered to him. It was delivered on the 2d day of May, 1872, and presented on the next day, May 3d, to the Third National Bank of Buffalo, upon which it was drawn by the Marine Bank of said city to which it had been transferred for value and payment refused The action was tried at the circuit in Erie county, in April, 1873, where a verdict was directed for the plaintiff and the case ordered to the general term upon exceptions.

*Oscar Folsom* and *Sherman S. Rogers,* for plaintiff.

The Marine bank was a bona fide holder of the check. *Brown* v. *Leavitt,* 31 N. Y. 13; *Day* v. *Saunders,* 3 Keyes, 347; *Lansing* v. *Gaine,* 2 Johns. 301. The check was not past due. It had no inception till delivery to Holbrook. The date is only *prima facie* evidence of date of inception; the actual date may be proved otherwise. Chitty on Bills, 148, 149; Byles on Bills, 58; Story on Prom. Notes, § 45; *Brewster* v. *McCardell,* 8 Wend. 479. The defendant is estopped from saying that the bank took the check with notice of dishonor. *Boehm* v. *Sterling,* 7 Term, 423; Story on Prom. Notes, § 492; Chitty on Bills, 222; Bailey on Bills, 164, ch. 5, § 3 (5th ed.) A check is not due until payment is demanded. Story on Prom. Notes, § 491, note; *Rothschild* v. *Corney,* 9 B. & C. 388.

*John Ganson,* for defendant.

The check on its face was past due when it had inception. *Down* v. *Halling,* 4 B. & C. 330; *Brooks* v. *Mitchell,* 9 Mees. & Wels. 15; 1 Pars. on Bills, 271; 2 id. 71, 278, 279; *Herrick* v. *Woolverton,* 42 Barb. 50; *Losee* v. *Dunkin,* 7 Johns. 70; *Sice* v. *Cunningham,* 1 Cow. 397, 407; *Morey* v. *Wakefield,* 41 Vt. 24; *Little* v. *Phœnix Bank,* 2 Hill, 426; *Alexander* v. *Birchfield,* 7 Man. & G. 1061; *Bridgeford* v. *Crocker, imp.,* Gen. Term, 4th Dep't, Nov., 1871. It was past due on its face when received by the Marine bank, and that bank acquired no better title than the payee had. *Down* v. *Halling,* 4 B. & C. 330; *Weathered* v. *Smith,* 9 Texas, 622; *Vairin* v. *Hobson,* 8 La. 50; *Brown* v. *Taber,* 5 Wend. 566. The case should have been submitted to the jury. *Lancaster Bank* v. *Woodward,* 18 Penn. St. 357. The consideration for the check was illegal. 14 U. S. Stat. at Large, 539, § 45; *Hatch* v. *Mann,* 15 Wend. 45.

E. D. SMITH, J. The circuit judge erred, I think, in taking the case from the jury and directing a verdict for the plaintiff. When this check was presented by Clark to the Marine Bank, and received by it in payment of a note due from him to said bank, it appeared upon its face to be overdue. The bank could not seriously claim that they took it in the ordinary course of business, and without notice that it was overdue, and without reasonable ground to believe that there was some question in respect to its validity, or some defense to it on the part of the drawer. The officers of every bank in this State, I should presume, know that the law and usage require that checks drawn upon a bank by a citizen of the place where the bank is situate are required, in the exercise of due diligence, to be presented for payment at the bank on the same day of its date, or at most on the next day after it is drawn and delivered. This check was drawn by a well-known citizen of Buffalo, on the Third National Bank of that city, in favor of another citizen of said city. It was dated March 8th, 1871, and was presented at the counter of the Marine Bank for negotiation on the 3d day of May, 1872, nearly fourteen months after its date. The Marine Bank could not, I think, become a *bona fide* holder of the check under such circumstances so as to cut off the drawer from any legal defense to it that might exist. It is true that if the National Bank upon which the check was drawn remained sound, and no loss had occurred to the drawer from the non-payment of the check at an earlier day, the defendant, as between himself and the holder, could remain liable to pay the amount of said check, in case it was not sooner paid at the bank, indefinitely, or until the statute of limitations should attach to such liability. *Little* v. *Phœnix Bank*, 2 Hill, 426.

The only question really in the cause is, whether defendant is cut off from a defense to the check on the ground that it had passed into the hands of a *bona fide* holder without notice of any defense to it by the drawer, or equity on his part. This question depends entirely upon the point whether the check was overdue when it was received by the Marine Bank. Checks represent money — cash — they are not intended as securities or for circulation. *Claflin* v. *Farmers and Citizens' Bank*, 25 N. Y. 299. They are drafts upon the drawer's bank to pay forthwith the amount of money specified therein to the payee therein named. They are drafts payable on demand, and according to their design and ·office the demand is to be immediate, in the sense of and according to the usage of banks.

In 1 Parsons on Bills and Notes, 271, it is said of checks: "They are payable on demand when not written otherwise, but differ from bills on sight or notes on demand in this, that they are not intended for circulation, and are considered dishonored at a much earlier period." In 2 Parsons on Bills, etc., 79, he says: "A check payable on demand may be said to be always overdue. In one respect, one who takes it sometime after it is dated, is said to acquire no other title to it than his transferor had." This, of course, as the author says, depends upon the question whether so much time had elapsed between the date of the check and its attempted negotiation, as to put the receiver on his guard.` In *Down* v. *Halling*, 4 B. & C. 330, the check was taken by the defendant five days after its date. HOLRYDE, J., said: "That was a circumstance which ought to have excited his suspicion." And ABBOTT, C. J., after consultation, said: "We are of the opinion that an instrument of this nature coming to the hands of a party so long after its date, is to be considered in the same light as a bill of exchange overdue." In the case of *Vairin & Reel* v. *Hobson & Co.*, 8 La. 50, the defendant made a check for $600, dated July 14, 1834, and delivered it to a creditor who lost it, and they repaid him the amount. The plaintiff purchased the lost check about the seventh or tenth of August afterward, of a person having possession of it, and without notice of the loss. *Held*, "that the check was overdue, and was to be considered as a bill overdue from the lapse of time between its date and negotiation — twenty-six or twenty-seven days." In *Herrick* v. *Wolverton*, 42 Barb. 50, it was held "that a note payable on demand and transferred nearly three months after its date, where the parties had their place of business in the same city and on the same street, was overdue, so as to subject it to any defense existing in behalf of the maker against the payee, previously to the transfer."

Since the foregoing was written I have received a copy of the opinion of my brother TALCOTT in the case of *Bridgeford* v. *Crocker*, decided in this department in the November term, 1871. In that case the action was upon a check of the defendant for $5,000, dated at Buffalo, July 22, 1867, upon the Mechanics' National Bank, New York, to the order of P. Garvin. It appeared on the trial that the check was negotiated by Garvin on the twenty-sixth day of October afterward for a valuable consideration. The question at the circuit was, whether the check, having been fraudulently diverted from the use for which it was designed, the plaintiff could

nevertheless recover on it as a *bona fide* holder. The circuit judge so held and instructed the jury that the plaintiff was entitled to recover within the law merchant, provided he was ignorant of the fact that Garvin had misapplied the check. This part of the charge was excepted to, and also the refusal of the judge to charge as requested, " that if the first inception of the check was its transfer to the plaintiff Garvin, that it was then dishonored paper, and the plaintiff took it subject to the equities between the parties." The plaintiff had a verdict.

My brother TALCOTT, after referring to several English cases on the subject, said as follows: " Whether the court is authorized to say that a bank check, specifying no day of payment, must be deemed to be past due and dishonored, so that any one who takes it for value of the payee, takes it at his peril, as to any defense between the latter and the drawee, or whether, as the English authorities hold, the lapse of time is merely evidence to go to the jury on the question of the good faith of the holder, it must be erroneous to hold as matter of law that such a check, negotiated by the payee over three months after its date, cannot be deemed overdue and dishonored at that time, but that the holder, for value without notice, is in such a case as matter of law protected against a defense existing as between the maker and the payee," and in accordance with this view the judgment was reversed, but without deciding whether the question, " Whether the check was dishonored," was one for the court or for the jury as a question of notice and good faith, according to the English cases therein referred to. *Rotschild* v. *Corney*, 9 B. & C. 388, and *Bank of Bengal* v. *Fagan*, 7 Moore's P. C. 61.

Without discussing the question, whether the point is one of law for the court, or for the jury as held in some of the English cases, I will simply suggest that, in my opinion, it is impossible to find or hold as matter of law or fact that a check, as between parties living in the same city with bank upon which it is drawn, can be negotiated or received five or six days after its date so as to give the holder the right of a *bona fide* holder of commercial paper, received in the ordinary course of business, for value. It cannot in such case be taken and received, it seems to me, in the ordinary and usual course of business in respect to the presentment of checks for payment, when the neglect of the holder to present it for payment has been such as to discharge the drawer and any indorser upon it in

case of its non-payment by the bank upon which it is drawn. The defendant clearly proved, and the fact is undisputed, that the consideration for this check was an allowance or promise agreed to be paid the payee thereof for his services as an assignee in bankruptcy, over and above the fees and compensation allowed by law, and in express violation of section 45 of the United States bankrupt act. This consideration was illegal and the check void. I do not see why the defendant did not establish a complete defense to this check. I think the motion for a new trial should be granted, with costs to abide the event.

*New trial granted.*